# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS & ST. JOHN

C.H. ROBINSON COMPANY,  )
                        )
    Plaintiff,          )
                        )
    v.                  )  Civil No. 2009-56
                        )
PRIME FOODS & SUPPLY, INC., PAT )
KELLY and TERRY HOSIER, )
                        )
    Defendants.         )
_____)

## MEMORANDUM OPINION

This matter is before the Court on the motion of defendant Terry Hosier ("Hosier") for costs and attorney's fees pursuant to 28 U.S.C. § 1927 and the Court's inherent authority with respect to sanctions. Hosier seeks costs and attorney's fees from plaintiff and its counsel. Plaintiff opposes the motion.

## I. FACTS

C.H. Robinson Company ("CHR") is a Minnesota produce wholesaler. Defendants Pat Kelly ("Kelly") and Terry Hosier ("Hosier") are alleged to be principals of Prime Foods & Supply, Inc. ("Prime Foods"). Prime Foods is currently in bankruptcy, having filed for protection in July 2009. This action arises out of an alleged debt for produce sold on credit by CHR to Prime Foods.

In April 2009, CHR retained Devin Oddo, Esq. ("Oddo") to pursue a claim against Prime Foods for nonpayment of commodities transactions occurring over several years in the aggregate amount of approximately $450,000.00. (Oddo Aff. (Docket No. 64-1) ¶¶ 5-6.)[1] CHR had provided

---

[1] A few weeks after the complaint was filed, plaintiff moved for Oddo to appear *pro hac vice* in this matter, but the motion eventually was denied without prejudice on November 24, 2009. CHR was represented in the matter by Michael Sheesley, Esq. Hosier does not request sanctions against Attorney Sheesley.

Oddo with a statement of account, invoices and other information to assist in preparing the claim. In addition to reviewing this information, Oddo did research relevant to asserting a claim against Prime Foods and the individuals he believed were in control of commodities transactions at Prime Foods, Hosier and Kelly. (*Id.* at ¶ 7.)

CHR commenced this action on April 15, 2009, with a Complaint and an *ex parte* Motion for Temporary Restraining Order and Preliminary Injunction, seeking the imposition of a statutory trust on the defendants' assets, pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499e(b)(2) and 499e(c)(5)(i). To support the Motion, Oddo had prepared a Declaration in which Luis LaFont ("LaFont"), a controller for CHR, attested that certain invoices and a statement of account were the documents relevant to CHR's transactions with Prime Foods. (*Id.* at ¶ 9.) Based on this declaration and documentation, Oddo concluded that CHR had a viable PACA trust claim against Prime Foods and its principals. (Oddo Aff. at ¶¶ 9-10.)

On April 16, 2009, the Court denied the Motion for Temporary Restraining Order and Preliminary Injunction, and set a trial date of May 22, 2009. In its Order, the Court directed CHR to serve the defendants with the pleadings and relevant documents (Docket No. 4), which it did on April 22, 2009. (Oddo Aff. at ¶11.)

On April 23, 2009, Oddo spoke with Hosier via telephone. According to Oddo, Hosier did not tell him that the invoices attached to the LaFont Declaration were not the invoices sent to Prime Foods, and Hosier admitted that Prime Foods owed CHR hundreds of thousands of dollars. (*Id.* at ¶ 12.)

On May 12, 2009, Oddo states he contacted Carol Rich, Esq. ("Rich"), who had previously represented Prime Foods in other lawsuits. Rich told him she had not yet been retained and that Oddo should speak directly with the Defendants. (*Id.* at ¶ 14.) On or about May 15, 2009, Prime Foods and Hosier retained Rich. Rich and Oddo thereafter sought to continue the initial trial date, and maintained regular contact over the next several weeks to discuss the case. Oddo claims that

during this time Rich did not inform Oddo that the invoices he had been provided were not the ones issued to Prime Foods. (*Id.* at ¶ 15.)

On June 22, 2009, Prime Foods and Hosier filed an Opposition to the Motion for Temporary Restraining Order, pointing out that the invoices attached to the LaFont Declaration had not actually been issued by CHR to Prime Foods. (Opp'n to Mot. for TRO at 2.) The Opposition asserted that CHR therefore did not have a viable PACA trust claim under §499e because the invoices Prime foods received did not contain the requisite language under 7 U.S.C. §499e(c)(4).

Upon learning of this, Oddo states that he conducted a further investigation that eventually substantiated Prime Foods and Hosier's contentions with regard to the invoices. (Oddo Aff. at ¶ 17.) As a result, on July 2, 2009, CHR filed a Motion to Continue Trial in order to withdraw its Motion for Preliminary Injunction and amend its Complaint. On that same day, the Court continued the trial to July 27, 2009. On July 10, 2009, CHR filed a Motion for Leave to file First Amended Complaint and Memorandum in Support, which requested leave to assert claims arising under 7 U.S.C. §499b against the defendants. Oddo conceded that the amended complaint contained a novel cause of action as to Hosier, but asserted he had a good faith belief that the law could support the claim. (Oddo Aff at ¶¶ 18-19.) On August 26, 2009, over Hosier's objection, the Court granted CHR's Motion to Amend the Complaint.

On August 31, 2009, Hosier filed a Motion to Dismiss the First Amended Complaint. Oddo claims not to have seen the Motion to Dismiss until October 16, 2009 (Oddo Aff. at ¶ 22.) On October 19, 2009, CHR filed a Motion for Leave to File a Response to the Motion to Dismiss, asserting that CHR was preparing a Motion for Summary Judgment that could also serve as an Opposition to the Motion to Dismiss. (Docket No. 45.) On October 20, 2009, the Court granted the Motion for leave to file, and on October 21, 2009, CHR filed a Motion for Summary Judgment that also opposed Hosier's Motion to Dismiss.

Over the next several weeks, Oddo states that he continued to investigate and prepare for trial. (Oddo Aff. at ¶ 23.) In doing so, Oddo discovered that Kelly was not involved in any sales of commodities to CHR. He consulted with Kelly's attorney and, on December 4, 2009, CHR dismissed the claims against Kelly with prejudice. At that time, the Court orally denied CHR's motion for summary judgment, took the motion to dismiss under advisement, and scheduled the trial for December 15, 2009.

In the course of preparing for trial, Oddo and CHR determined not to proceed only against Hosier who, based upon representations from Rich, had little or no personal assets. (Oddo Aff. at ¶ 24.) Accordingly, CHR sought to dismiss the action with prejudice under Fed. R. Civ. P. 41(a)(1)(A)(i) on December 9, 2009. On December 10, 2009, the Court approved the dismissal with prejudice as to Hosier and Kelly. The instant motion followed.

## II. **DISCUSSION**

**A. Section 1927 Sanctions**

28 U.S.C. § 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The statute is aimed at addressing acts by attorneys that unreasonably extend court proceedings. *Zuk v. Eastern Pa. Psychiatric Inst.*, 103 F.3d 294, 297 (3d Cir. 1996) ("Although a trial court has broad discretion in managing litigation before it, the principal purpose of imposing sanctions under 28 U.S.C. § 1927 is the deterrence of intentional and unnecessary delay in the proceedings.") The statute does not apply to acts that occurred prior to the filing of a lawsuit, such as a "failure to make a reasonable inquiry into the facts and law before filing," nor does it authorize imposing sanctions on a client. *Zuk,* 103 F.2d at 297.

Moreover, Section 1927 sanctions require a finding of willful bad faith, not merely a showing of objectively unreasonable conduct. *Baker v. Cerberus, Ltd.*, 764 F.2d 204, 208-09 (3d Cir. 1985) ("conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation"). *See also Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 142 (3d Cir. 2009)("sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal;" (quoting *LaSalle National Bank v. First Connecticut Holding Group, L.L.C. XXIII*, 287 F.3d 279 (3d Cir. 2002)).

Sanctions under § 1927 are appropriate for attorneys who engage in "a serious and studied disregard for the orderly process of justice," *Ford v. Temple Hosp.*, 790 F.2d, 342, 347 (3d Cir 1986), and not simply those who bring weak cases:

> [I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.... Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421-22 (1978).

Ultimately, "[i]n order to award attorneys' fees under 28 U.S.C. § 1927, a court must find that an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*, 317 Fed. Appx. 169, 172 (3d Cir. 2009)**.**

**B. Court's Inherent Power to Sanction**

A district court has the inherent power "to sanction errant attorneys financially." *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 566 (3d Cir. 1985)(citing *Roadway Express, Inc. v. Piper*, 447

U.S. 752, 765 (1980)). "'[B]ecause of their very potency, inherent powers must be exercised with restraint and discretion.'" *The Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 2001) (quoting *Chambers v NASCO, Inc.,* 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27, 45 (1991)). "Thus, a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must ensure that the sanction is tailored to address the harm identified." *The Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d at 74. A court may only use its inherent power to assess attorney fees as a sanction in narrowly-defined circumstances. *Roadway*, *supra,* 447 U.S. at 765. These rare situations are, for example, for when a party has engaged in egregious acts such as litigating in bad faith, abused judicial processes, or threatened witnesses with violence. *See e.g. The Republic of the Philippines v. Westinghouse Elec. Corp.*, *supra* at 73- 74. In *Alyeska Pipeline Svc. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975), the Supreme Court acknowledged the "inherent power" of the courts to "assess attorneys' fees . . . when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . .'" *Id.* (citations omitted).

### III. ANALYSIS

**A. Section 1927 Sanctions**

Hosier alleges that CHR and Oddo filed this action without a proper factual investigation. Hosier also argues that CHR's pursuit of an unfair conduct claim after it became apparent that CHR could not pursue a PACA trust claim against Hosier was a frivolous and baseless action undertaken in bad faith.

In cases where courts have granted § 1927 sanctions, bad faith is usually apparent and egregious. For example, in *Administrator-Benefits for the ExxonMobil Savings Plan* v. *Williams*, the Court levied § 1927 sanctions after an attorney disobeyed the Court's scheduling order and filed numerous frivolous motions:

> Attorney Rogers acted unreasonably in requesting the continuance only hours before the conference was scheduled to commence. By untimely filing the motion for

> continuance on the same day as the scheduled conference, and by failing to communicate with the Court or make any effort to participate in the conference, Rogers demonstrated bad faith. Rogers also demonstrated bad faith by filing a frivolous motion on Patricia Benjamin's behalf to dismiss this action on jurisdictional grounds. . . . In this case, Rogers intentionally and unreasonably disobeyed the Court's scheduling order. Rogers failed to appear or participate by telephone in the conference and offered no excuses for his absence, except perhaps the frivolous motions he filed. He thereby necessitated the scheduling of another conference, wasting the time and resources of the Court and plaintiff's counsel. He acted willfully in bad faith, evidencing a serious and studied disregard for the orderly processes of justice.

2009 U.S. Dist. LEXIS 120213, at *3 (D.V.I. December 22, 2009). Similarly serious conduct was at issue in *Griffith v. Hess Oil V.I. Corp.*, 5 F. Supp. 2d 336 (D.V.I. 1998), where the Court imposed § 1927 sanctions for significantly aberrant behavior. In that case, the Court found that "a conscious and deliberate effort by an attorney of the bar of this Court to withhold highly relevant case authority from the Court would constitute bad faith." *Id.* at 340.

Hosier argues that the facts of this case satisfy the requirement of bad faith action for § 1927 recovery, citing *Ford v. Temple Hosp.,* 790 F.2d 342, 347 (3d Cir. 1986), for the proposition that bad faith will be found where there is "indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay."[2]

Hosier first contends that bringing a § 499e claim against him constitutes bad faith because Oddo made the factually incorrect assertion that CHR had a valid trust claim against the Defendants, and he should have done a better pre-filing investigation.[3] As noted, *supra,* § 1927 does not authorize sanctions for the pre-filing conduct alleged. Second, in his affidavit Oddo attests that in advancing that claim he relied on the sworn declaration of LaFont that the invoices provided to Oddo were the invoices actually sent to Prime Foods. Hosier has not demonstrated that Oddo had actual knowledge to the contrary.

---

[2] In repeatedly referring to this holding, Hosier emphasizes the intentional advancement of a baseless contention, ignoring the requirement that such contention be made for an ulterior purpose.

[3] As discussed *supra*, CHR did not have a viable PACA trust claim under § 499e because the invoices sent by CHR to Prime Foods did not contain the requisite language under 7 U.S.C. § 499e(c)(4).

Next, when faced with evidence that the invoices sent to Prime Foods did not contain the language necessary to establish a PACA trust, Oddo and CHR conceded that no PACA trust existed and promptly asked leave of the Court to dismiss the PACA trust claim. Although arguing this claim was without basis, Hosier does not delineate an ulterior motive on the part of CHR or Oddo. Oddo attests that he believed CHR's theory as set forth in the amended complaint was not baseless, but rather represented a fair extension of the law. It appears evident that CHR and Oddo acted for the purpose of collecting on an admitted debt. As such, while Oddo's actions may have been predicated on a legally-deficient theory, there is no evidence that they were undertake, in bad faith.

**B. Court's Inherent Power to Sanction**

This is also not a case that warrants the invocation of the Court's inherent power to sanction. A court may use its inherent authority to sanction when a party has engaged in egregious acts. *The Republic of the Philippines v. Westinghouse Electric, supra*. Here, although Oddo may have advanced a legally-deficient claim predicated on what turned out to be an incorrect set of facts, and then amended to assert a novel legal theory CHR ultimately abandoned, the record does not demonstrate egregious conduct. Rather, when Oddo became aware that CHR did not have a valid PACA trust claim, that claim was dismissed. And, when the risks of proceeding with a novel amended claim were weighed against the chance of little or no recovery against the remaining defendant, CHR dismissed the action. "[I]nherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991). Here, the evidence falls short of showing conduct so egregious conduct that the imposition of sanctions is warranted.

The premises considered, it is hereby

**ORDERED** that Prime Food's motion for sanctions is **DENIED**.

DATED: September 29, 2010                    S\_____
                                             RUTH MILLER
                                             United States Magistrate Judge